IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-HC-2137-H

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| EARL WEBSTER COX, ) | |
| Respondent. ) | |

The United States initiated this action on July 12, 2011, seeking to civilly commit Earl Webster Cox as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. §§ 4247-4248 ("Adam Walsh Act"). On September 19, 2012, the court conducted an evidentiary hearing pursuant to 18 U.S.C. § 4247(d). The government presented the testimony of three expert witnesses: Dr. Joseph Plaud,[1] Dr. Heather Ross, and Dr. Jeffrey Davis, all of whom are licensed clinical psychologists.[2] In addition, the court admitted into evidence various documentary exhibits offered by

---

[1] Dr. Plaud was selected by respondent to conduct a mental health examination but was called to testify on behalf of the government.

[2] The government also called as a witness Karen Paynter, a case worker at FCI Butner and the records custodian for Adams Walsh Act cases.

the parties, including the reports of forensic evaluations conducted by the expert witnesses, court records, and prison records. The parties have each filed proposed findings of fact and conclusions of law, and this matter is ripe for adjudication.

## BACKGROUND

Earl Webster Cox is a fifty-five-year-old male who has been in federal custody since January 2003. At the time this action was initiated, Cox was serving a 120-month term of imprisonment for the attempted enticement of a minor to travel in interstate commerce for sexual activity, in violation of 18 U.S.C. §§ 2422(a) and 2426(a), and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Cox was due to be released from custody on September 27, 2011; however, on July 12, 2011, the government certified Cox as a sexually dangerous person pursuant to 18 U.S.C. § 4248, thereby staying Cox's release from federal custody.

A. <u>Personal History</u>

Cox was born and raised in St. Louis, Missouri, along with two older sisters and two younger brothers. Cox's father was employed as a restaurant manager. Both of Cox's parents were heavy drinkers. Cox reports having witnessed his father rape his mother when Cox was seven years old. At the age of twelve,

2

Cox's father died as a result of a ruptured ulcer. His death greatly impacted Cox, who has described his life as having ended when his father died.

A year after the death of Cox's father, Cox's mother married a Merchant Marine. Cox's step-father was also a heavy drinker and verbally and physically abused Cox, his mother, and his siblings.[3] Due to the abuse, Cox frequently ran away from home. Cox began drinking alcohol at the age of twelve or thirteen.

Cox graduated from high school and joined the United States Air Force in 1975. Cox received training in computer operations at the Air Force Technical School in Biloxi, Mississippi. Upon completion of his training, Cox served as a computer operator for five years. Cox was stationed at the Air Force Global Weather Central Command at Offutt Air Force Base in Omaha, Nebraska, for three years and at the Rhein-Main Air Force Base in Frankfurt, Germany, for two years.

In 1980, Cox was court-martialed and dishonorably discharged upon his conviction of multiple sex offenses involving four minor children. He received a sentence of eight

---

[3]At one point, his mother was wheelchair bound after having been severely beaten and pushed down the stairs by Cox's stepfather.

3

years, which he served at Fort Leavenworth. Cox was paroled in December 1985.

In January 1987, Cox married a convicted murderer he had met while incarcerated at Fort Leavenworth. The marriage was apparently one of convenience. After their release from prison, she became pregnant with another man's child. Cox agreed to marry her so the child would have a father. Cox and his wife lived together for less than one year, then separated. At six weeks of age, the child was given to his wife's parents, who eventually adopted the baby.

Cox claims to have had eight prior sexual partners, all female. His first sexual experience occurred at the age of seventeen or eighteen with a girlfriend of the same age. His longest relationship was with a married woman with whom he lived from May 1994 to December 1996. His most recent relationship was in 1998. Cox also engaged in sexual intercourse with prostitutes approximately twelve times while stationed in Germany.

B. <u>Sexual Offense History</u>

Cox's first criminal conviction was in 1982. On several occasions between August 1980 and April 1981, Cox sexually assaulted four children he was babysitting while stationed in Germany. The victims were all female, ranging in age from seven

4

to eleven. On August 30, 1980, Cox unlawfully struck two of the girls on the buttocks with his hand. On that same date, he rubbed the genitalia of one of the victims, pulled her pants down thereby exposing her genitalia, and inserted one of his fingers into her vagina. He forced the other victim to pull her pants down and thereupon rubbed her genitalia with his hand. In November 1980, Cox rubbed a child's "private parts" with his hand while she was clothed for the purpose of sexual gratification. On December 23, 1980, Cox took indecent liberties with a victim by pulling her pants down, exposing her private parts, spreading her legs apart and inserting a candy cane into her vagina, which he forced her to lick after he had withdrawn it from her vagina. Also on that date, Cox committed sodomy upon one of the children by licking her genitalia. In April 1981, Cox grabbed a child by the waist and turned her upside down with her legs apart with the intent to gratify his sexual desires. As a result of these actions, Cox was convicted of sodomy of a child under the age of sixteen, three counts of assault and battery and six counts of indecent acts with a child under the age of sixteen. Cox served five years on an eight-year term of imprisonment and was paroled on December 2, 1985.

While on parole from these offenses, Cox was arrested and charged with sexual abuse of a child for an October 1989

incident when Cox took two girls (approximately six or seven years old) to the movies, then to a park. Although the charges were dismissed with prejudice in September 1991, Cox's parole was subsequently revoked as a result of the October 1989 incident and another incident of alleged touching of a child about which Cox had been questioned by police in June 1991. Upon revocation of his parole, Cox was incarcerated at Fort Leavenworth from January 1992 until his discharge on December 7, 1992.

In or around 1997, Cox became involved in an international child pornography network known as the "Brotherhood." The Brotherhood operated electronic bulletin boards on which members post hyperlinks to child pornography images and web sites. The images posted could be exiting images or new images produced by the member. The bulletin boards had three main public areas: Ranchi, Panty Raiders/Lolita Lovers and Shadows. There are also semi-private and private boards which a member can access only after having posted a certain number of child pornography images and having been promoted within the group. Cox was an administrator for the Panty Raiders/Lolita Lovers group for a number of years. As an administrator, he helped maintain the bulletin board by deleting old or decommissioned child

6

pornography links and policing chats, thereby facilitating the international distribution of child pornography.

In November 2002, Cox began exchanging sexually explicit emails with "Brenda," an undercover FBI agent posing as a fourteen-year-old girl in an internet chat room named "teen flirt." Using the screen name "YoungStuff," Cox told "Brenda" that he wanted to f*** her and spank her. Cox sent "Brenda" emails encouraging her to leave her home in Virginia and come to Colorado to be his "sex slave." Cox sent "Brenda" $60.00 for bus fare from Fredericksburg, Virginia, to Pueblo, Colorado. Cox instructed her to wear a short skirt, red tube top and no bra or panties and told her to meet him at a restaurant up the hill from the Pueblo bus station on January 10, 2003.

An undercover officer, dressed as Cox had instructed, got off the bus at Pueblo and met Cox at the restaurant. Cox identified himself to "Brenda" and was arrested. Cox admitted his actions and told the agents that he would have had sex with "Brenda" had she been willing.

Following Cox's arrest, agents conducted a search of Cox's home and computer. A forensic examination of the computer revealed in excess of 45,000 still images and videos of child pornography, including nineteen videos of a man raping, sodomizing and sexually abusing his biological daughter, who

7

appeared to be between three and five years of age at the time.

As a result of this conduct, Cox was charged with attempted enticement of a minor to travel in interstate commerce for sexual activity, in violation of 18 U.S.C. §§ 2422(a) and 2426(a); using the mail or interstate commerce to attempt to entice a minor to engage in sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 2426(a); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and nineteen counts of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). On August 14, 2003, Cox pled guilty in the United States District Court for the District of Colorado to attempted enticement of a minor to travel in interstate commerce for sexual activity and one count of receiving child pornography. Cox was subsequently sentenced to 120 months' imprisonment and three years of supervised release. Cox has been in federal custody since that time.

Cox completed four years of sex offender treatment while incarcerated at Fort Leavenworth. Additionally, he participated in outpatient psychotherapy while on parole from 1985 to 1989. He has not participated in the sex offender treatment program while at FCI Butner.

## COURT'S DISCUSSION

The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006), authorizes the indefinite civil commitment of, inter alia, individuals in the custody of the Bureau of Prisons who are determined to be sexually dangerous persons. A "sexually dangerous person" is defined by statute as one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). "Sexually dangerous to others" means that "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6).

To obtain an order civilly committing Cox pursuant to § 4248, the government must prove by clear and convincing evidence: (1) that Cox "has engaged or attempted to engage in sexually violent conduct or child molestation"; (2) that Cox currently "suffers from a serious mental illness, abnormality, or disorder"; and (3) that as a result of the serious mental illness, abnormality, or disorder, Cox "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." United States v. Comstock, 627 F.3d

9

513, 515-16 (4th Cir. 2010). Clear and convincing evidence is "'evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established,'" or "'evidence that proves the facts at issue to be highly probable.'" United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012) (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001)).

I. Sexually Violent Conduct or Child Molestation

There is no dispute in this case that Cox has previously engaged in or attempted to engage in acts of child molestation. This is evidenced by his 1982 convictions for sodomy of a child under the age of sixteen and indecent acts with a child under the age of sixteen, as well as his 2003 convictions for attempted enticement of a minor to travel in interstate commerce for sexual activity and receiving child pornography. See 28 C.F.R. § 549.93 (defining "child molestation" to include "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years"), cited with approval in United States v. Comstock, 627 F.3d 513, 520 (4th Cir. 2010). Thus, the government has established the first prong of sexual dangerousness by clear and convincing evidence.

10

## II. Serious Mental Illness, Abnormality or Disorder

The government has also shown, by clear and convincing evidence, that Cox suffers from a serious mental illness, abnormality or disorder. The court heard the testimony of three forensic psychologists, Drs. Jeffrey Davis, Joseph Plaud and Heather Ross, and their reports were entered into evidence. (See Petr.'s' Trial Exs. 3, 5, 7). All three of these experts found that Cox suffers from pedophilia, sexually attracted to females, non-exclusive type, meaning that Cox's sexual orientation is directed to both prepubescent and post-pubescent females. Cox does not dispute the experts' diagnosis of pedophilia. As pedophilia[4] is a "serious mental illness, abnormality or disorder" within the meaning of § 4248, the government has met its burden as to the second prong.[5]

---

[4]Pedophilia is a paraphilia, the diagnostic criteria for which include recurrent, intense, sexually arousing fantasies, sexual urges or behaviors involving sexual activity with prepubescent children (generally age 13 years or younger) over a period of at least six months, which the individual has acted upon or which have caused the individual marked distress or interpersonal difficulty. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (Text Revision). In addition, a diagnosis of pedophilia is appropriate only if the individual is at least sixteen years old and at least five years older than the child or children. Id.

[5]The government urges the court to also find that Cox suffers from paraphilia (not otherwise specified) and a personality disorder marked by paranoid and narcissistic features. In light of its ruling herein, the court declines to

## III. Serious Difficulty Refraining from Sexually Violent Conduct or Child Molestation

The third prong requires the government to prove, by clear and convincing evidencing that Cox, if released, would have serious difficulty in refraining from sexually violent conduct or child molestation as a result of his pedophilia. This prong "'serve[s] to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control.'" United States v. Hall, 664 F.3d 456, 463 (4th Cir. 2012) (quoting Kansas v. Hendricks, 521 U.S. 346, 357 (1997)). The government need not establish that the person it seeks to commit will or is likely to reoffend. However,

> there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

Kansas v. Crane, 534 U.S. 407, 413 (2002).

The mere presence of a sexual attraction to minors is insufficient to meet the "serious difficulty" prong. United States v. Carta, No. 07-12064, 2011 WL 2680734 (D. Mass. July 7,

---

determine whether these diagnoses apply to Cox or whether they constitute a "serious mental illness, abnormality or disorder" for purposes of § 4248.

2011), aff'd, No. 11-1921, 2012 WL 3064842 (1st Cir. July 27, 2012). "[I]f the person the government seeks to commit has developed the skills necessary to overcome the urge to have sexual contact with minors without [serious] difficulty," the government fails in meeting its burden as to this prong of the test. Id.

The three experts in this case are unanimous in their opinions that Cox will have serious difficulty in refraining from engaging in sexually violent conduct if released. Dr. Plaud, who was selected as Cox's expert, testified that he believes Cox's condition to be chronic. He noted that Cox has sexually exploited pre-pubescent girls over a period of two decades, that he has a "consistency of behavior," and that the treatment he has received has had little effect on Cox.

According to Dr. Plaud, Cox has expressed no empathy for his victims and has failed to acknowledge any wrongdoing on his part. With regard to Cox's 1980-1981 sexual assaults, Dr. Plaud notes that Cox stated he learned at Fort Leavenworth that his "inhibitions were in a state of severe compromise due to a number of factors," including pain medication he was taking as a result of an automobile accident, the mixing of alcohol with those medications, a severe beating suffered by his mother at the hands of his step-father, and the trauma he experienced as a

13

result of his father's death and physical abuse by his stepfather. In his forensic evaluation report, Dr. Plaud notes that Cox "focused on the control and anger he was experiencing at the time of the assaults, rather than on a primary sexual motivation or attraction to pre-pubescent individuals." (Petr.'s Trial Ex. 7 at 4.)

Dr. Plaud also testified that Cox's explanation of his 2003 conviction "borders on delusional." Plaud stated that Cox blamed his involvement in the internet child pornography ring on a work-related accident - that while recovering from an injury at home he began spending time on the internet in sexual chatrooms, which he claimed to be all adult. Cox described the Panty Raiders/Lolita Lovers group he administered as initially being of a "softcore nature" and decided to end his involvement in the sexual boards when they became harder core. (Petr.'s Trial Ex. 7 at 5.) Cox claimed that he wanted to put a stop to the exploitation of children and decided to "put into motion 'a plan to get busted, so that the Feds could use the computer information [he] had'" to prosecute the others involved. (Petr.'s Trial Ex. 7 at 5-6.) Cox maintained that he knew "Brenda" was a federal agent and that it was because of his plan that "we brought the group down," with more than sixty individuals being arrested and prosecuted for their involvement

14

in the pornography ring. (Petr.'s Trial Ex. 7 at 6.) Dr. Plaud testified that he has seen nothing to indicate to him that Cox has changed - that he continues to externalize his behavior rather than deal with the reasons underlying his sexual urges and behavior. According to Dr. Plaud, Cox has never acknowledged his actions were wrong or bad, and Cox's minimization of his conduct is so pervasive that it operates as a barrier to change.

Dr. Ross testified that a number of factors indicate that Cox has a volitional impairment that puts him at great risk to reoffend. She opines that Cox's history is "significant for sexual pre-occupation." (Petr.'s Trial Ex. 5 at 17.) Cox suggested to her that viewing pornography "was not a risk factor for future hands-on offending for him and noted that interacting with the other [internet child pornography] administrators was like 'group therapy' for him." (Petr.'s Trial Ex. 5 at 17.) Dr. Ross notes that Cox had repeated contact with one or more victims he molested and that his "obsessive involvement" in child pornography in the late 1990s through 2003 was a "lifestyle" for him. These factors, as well as Cox's limited sexual interest or involvement with adults and his lack of positive social influences, are factors Dr. Ross considers indicative of a lack of volitional control.

15

Dr. Davis also opines that Cox will have serious difficulty in refraining from sexually violent conduct or child molestation as a result of his pedophilia. Dr. Davis testified that Cox is not impulsive but possesses poor problem-solving skills. He points out that Cox made no statement of an intent or ability to refrain from reoffending and that he would not have any confidence in Cox were he to now claim responsibility for his prior acts. Dr. Davis finds Cox's more recent offense conduct to be particularly troubling since it occurred after Cox had been sanctioned for prior similar acts. It is Dr. Davis' opinion that, following Cox's court-martial, his paraphilic behavior actually escalated, thereby evidencing a volitional impairment.

To assist in their assessment of Cox's risk of sexual recidivism, Drs. Davis and Ross utilized a number of actuarial instruments. Dr. Ross used the Static-99R and scored Cox in the moderate/high or high risk category for reoffending. Dr. Davis used the Static-99R, Static-2002R, the Minnesota Sex Offender Screening Tool-Revised ("MnSOST-R"), and the Structured Risk Assessment-Forensic Version Light ("SRA:FV/Light"). Dr. Davis scored Cox in the moderate/high or high risk category on the Static-99R, in the moderate risk category on the Static-20002R,

16

in the high risk category on the MnSOST-R, and in the high range of the SRA:FV/Light.

Drs. Davis and Ross also considered dynamic risk factors relevant to sexual offense recidivism using STABLE-2007. Dynamic risk factors are factors that have the capacity to change over time, such as with treatment or due to the aging process. Both Drs. Davis and Ross identified the following dynamic risk factors as increasing Cox's risk of sexual recidivism: (1) significant social influences, particularly Cox's criminal peer association and the lack of positive social influences; (2) intimacy deficits evidenced by Cox's lack of a stable relationship and his emotional identification with children; and (3) sexual self-regulation based on Cox's long history of sexual preoccupation and pronounced deviant sexual interests in prepubescent and pubescent girls. In addition, Dr. Davis identified as problematic Cox's cooperation with supervision in the community based upon Cox's parole revocation, although Dr. Davis does credit Cox for cooperating with supervision while incarcerated.

Dr. Plaud utilized the Sexual Violence Risk-20 ("SVR-20"), an instrument used to evaluate twenty static and dynamic factors or areas of functioning in individuals convicted or alleged to have committed a sexual offense. The SVR-20 is used in

17

assessing the risk of sexual offense recidivism, as well in the future planning of psychological or behavioral interventions to manage or reduce future risk. It is Dr. Plaud's expert opinion that Cox "present[s] with a significant pattern of risk factors for engaging in sexually recidivistic behavior given the risk factors measured by the SVR-20, especially when focus is given to dynamic factors as opposed to static or historical factors in the risk analysis." (Petr.'s Trial Ex. 7 at 11.)

Dr. Plaud also administered the Personality Assessment Inventory ("PAI") and the International Personality Disorders Examination ("IPDE"). The PAI is an objective inventory of adult personality used to assess psychopathological syndromes, and the IPDE is a diagnostic instrument developed to provide a uniform approach for assessing personality disorders. Dr. Plaud reports that PAI testing revealed that Cox "tends to portray himself as being relatively free of common shortcomings to which most individuals will admit, and he also appears somewhat reluctant to recognize minor faults in himself." (Petr.'s Ex. 7 at 12.) Dr. Plaud also notes that IPDE test results reveal that Cox exhibits paranoid and narcissistic tendencies which, when combined with Cox's paraphilia, suggest an acute and serious sexual deviancy that, in Dr. Plaud's opinion, would cause Cox to "hav[e] serious difficulty in refraining from sexually violent

conduct or child molestation if he were released at the present time." (Petr.'s Trial Ex. 7 at 10.)

The experts also examined possible protective factors that may decrease Cox's risk of sexual recidivism. These factors include (1) residing in the community without sexually offending for a significant period of time; (2) having less than fifteen years left in the offender's time at risk due to illness or physical conditions that significantly decrease the motivation and/or ability to sexually reoffend; and (3) the offender's advanced age. All of the experts agree that the protective factors do not significantly lessen Cox's sexual dangerousness.

The court concludes that the government has established that Cox lacks the volitional control to refrain from sexually reoffending. Cox has a long history of sexual deviancy involving contact and non-contact offenses with prepubescent and pubescent girls. The frequency, severity and variety of his offenses are extremely troubling. Cox has not developed the skills necessary to overcome his sexually deviant urges involving minor children. Instead, he continues to minimize and externalize his pedophilic behavior. He has also refused to participate in sex offender treatment while in custody. Although Cox may be subject to a remaining term of supervised release, the court finds the conditions imposed to be

19

insufficient to prevent Cox from engaging in high risk activities, such as having contact with minor children. Moreover, no evidence has been presented to show that Cox has developed a realistic plan for his release[6] or that Cox will even be receptive to sex offender treatment. In sum, the court concludes that the government has met its burden of proving, by clear and convincing evidence, that as a result of his pedophilia, Cox will have serious difficulty in refraining from sexually violent conduct or child molestation.

## CONCLUSION

For the foregoing reasons, the court finds that Earl Webster Cox is a sexually dangerous person under the Adam Walsh Act. Accordingly, it is hereby ordered that Earl Webster Cox be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4248.

This 17TH day of October 2012.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#31

---

[6] Cox reported to Dr. Davis that he plans to open his own siding business and has requested placement in a halfway house because he presently has no suitable friends or relatives with whom to live if released.